Dennis M. WOLFEL, Plaintiff-Appellee, Cross-Appellant,

v.

Nick SANBORN et al., Defendants-Appellants, Cross-Appellees.

Nos. 76–1030–31.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1977.

Decided May 2, 1977.

Jeffrey W. Hutson, Lane, Alton & Horst, Columbus, Ohio, for plaintiff-appellee, cross-appellant.

William J. Brown, Atty. Gen. of Ohio, Robert D. Doane, Columbus, Ohio, for defendants-appellants, cross-appellees.

Before PHILLIPS, Chief Judge and WEICK and EDWARDS, Circuit Judges.

PHILLIPS, Chief Judge.

The appellee and cross-appellant, Dennis M. Wolfel, was arrested while on parole by the Columbus, Ohio, Police Department and charged with intoxication. Wolfel posted bond, but this bond was forfeited when he failed to appear in court. Subsequently, Wolfel was arrested and his room searched by his parole officer, John Barkeloo, after Barkeloo received an oral complaint against Wolfel for brandishing a gun in public. Wolfel was incarcerated pending investigation of the gun charge. He was not accorded the preliminary hearing to determine probable cause to revoke parole required by *Morrissey v. Brewer,* 408 U.S. 471, 485, 92

S.Ct. 2593, 33 L.Ed.2d 484 (1972), because, pursuant to an unwritten policy of the Ohio Adult Parole Authority, Barkeloo and Nick Sanborn, the Regional Supervisor for the Parole Authority, determined that Wolfel's bond forfeiture on the intoxication charge obviated the need for a preliminary probable cause hearing. After 27 days of incarceration, Wolfel was released and returned to parole at the recommendation of Barkeloo.

On March 15, 1974, Wolfel brought this action for damages under 42 U.S.C. § 1983, alleging that Nick Sanborn and John Barkeloo had violated his constitutional rights incident to his arrest, the search of his room without a warrant, and his incarceration without a preliminary hearing. The District Court directed verdicts for the defendants on the arrest and search claims, but refused defendants' requested instructions on good faith in relation to the claim of incarceration without a preliminary hearing. A jury award of $1,000 in damages to Wolfel was sustained by the District Court. Both sides appealed. We affirm the directed verdicts on the arrest and search issues and reverse the judgment for damages on the ground that Sanborn and Barkeloo were entitled to submit their good faith defense to the jury.

## I.

Dennis M. Wolfel, plaintiff and cross-appellant, was serving a one-to-fifteen year sentence for burglary in the night season when he was paroled from the Ohio Penitentiary on March 5, 1973. John Barkeloo, defendant, appellant and cross-appellee, was assigned by the Ohio Adult Parole Authority as supervising parole officer for Wolfel.

In the early morning hours of May 27, 1973, Gladys Kuhn, the owner of a sandwich shop, complained to the Columbus, Ohio, Police Department that Dennis Wolfel had been in her shop brandishing a pistol. The police responded and found Wolfel in a nearby tavern. Wolfel denied having a gun. A search by the police of his person, the tavern and the adjacent grounds produced no weapon. The Columbus police arrested Wolfel on an intoxication charge and took him to the station where he posted a $30.00 bond and was released. Wolfel failed to appear on the intoxication charge on May 29, 1973, and his bond was ordered forfeited by a judge of the Municipal Court for Franklin County, Ohio.

On May 28, 1973, Wolfel again was arrested by the Columbus Police Department after a complaint by Gladys Kuhn. This second complaint involved charges of telephone harassment and trespassing. Wolfel again posted bond and was released from custody. These charges of telephone harassment and trespassing were dropped some months later at the request of the City Prosecutor.

On May 29, 1973, Gladys Kuhn appeared at the offices of the Ohio Adult Parole Authority to make a complaint against Wolfel. With John Barkeloo present, Mrs. Kuhn dictated a statement accusing Wolfel of brandishing a gun in her place of business on May 27th and making threatening gestures toward her and another employee. A typewritten copy of the statement was prepared but Mrs. Kuhn did not sign it.

Defendant Barkeloo arranged to meet with Wolfel on the next day, May 30th, at the home of Wolfel's grandmother where Wolfel maintained a room. Wolfel appeared voluntarily and accompanied Barkeloo and another parole officer back to the offices of the Parole Authority. Barkeloo informed Wolfel of the charges Gladys Kuhn had made against him. After consultation with Nick Sanborn, Columbus Regional Supervisor for the Ohio Adult Parole Authority and Parole Officer Barkeloo's immediate superior, Barkeloo arrested Wolfel for parole violations. Wolfel was permitted to contact his attorney and was then incarcerated in the county jail. Wolfel was not afforded a preliminary "on-site" hearing to determine whether there was probable cause to revoke his parole at the time of his arrest or during his subsequent incarceration.

On May 31, 1973—one day after Wolfel's arrest and two days after Gladys Kuhn

made her complaint to the Parole Authority—defendant Sanborn consulted with Barkeloo and then directed Barkeloo and another officer to go to Wolfel's grandmother's house and search for the firearm. Wolfel's living quarters consisted of a small, unlocked room in his grandmother's house which Wolfel occupied alone and without paying rent. The district court determined that Wolfel's grandmother had custody and control over the room Wolfel occupied and that she consented to the search of this room by Parole Officer Barkeloo and his associate on May 31. The search was conducted with Mrs. Wolfel in attendance and no firearm was found.

On June 16, 1973, defendant Barkeloo filed a report with the Parole Authority recommending that Wolfel be released from custody and returned to parole. This report was processed and approved and on June 26, 1973 (27 days after his arrest by defendant Barkeloo), Wolfel was placed back on parole.

The instant civil rights action was commenced by plaintiff Wolfel against defendants Sanborn and Barkeloo on March 15, 1974. At the time of trial two basic claims remained to be resolved: (1) that the defendants by the arrest and incarceration of plaintiff without an on-site hearing deprived plaintiff of his right to liberty and his right to due process; and (2) that defendants by their search of plaintiff's dwelling place without a warrant and without his consent deprived plaintiff of his fourth amendment freedom from unlawful search. Plaintiff sued for damages in the amount of $10,000 on each claim and an additional award of punitive damages.

After hearing the evidence adduced at trial, the district court directed verdicts for the defendants concerning the propriety of the arrest by Barkeloo on May 30, and concerning the search of Wolfel's room on May 31. The court found that Barkeloo had reasonable cause to believe that Wolfel had violated the terms of his parole and thus was authorized to arrest Wolfel pursuant to Ohio Revised Code § 2967.15.[1] The court also found, as noted above, that Wolfel's grandmother exercised control over the room Wolfel occupied in her house, that she had authority to consent to a search of the room, and that she in fact had consented.

On the issue of incarceration without a preliminary on-site hearing, the evidence showed that the events in question occurred after the Supreme Court announced its decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and that Wolfel was not accorded the on-site hearing indicated in that decision. Plaintiff introduced as an exhibit Parole Supervision Section Bulletin No. 13 promulgated by the Ohio Department of Rehabilitation and Correction and dated January 17, 1973. This Bulletin stated in part as follows:

I. PURPOSE

As a result of the ruling on June 29, 1972, by the United States Supreme Court in the case of John J. Morrissey and G. Donald Booher, petitioners, versus Lou B. Brewer, Warden, et al., the following procedures will be necessitated when a parole violation report is submitted.

II. POLICY

1) Except when the parolee has absconded and his whereabouts is unknown or when there has been a judicial determination by a court of probable cause (this includes preliminary hearing resulting in a bind over, Bill of Information, and Secret Indictment) or a conviction of any crime or an adjudication of any fact constituting a violation of parole, a hearing must be afforded the parolee at or near the site of the alleged violation of his parole.

1. O.R.C. § 2967.15 reads in pertinent part:

\* \* \* \* \* \*

Whenever any parole officer has reasonable cause to believe that any parolee under the supervision of the authority has violated the terms and conditions of his pardon or parole, such parole officer may arrest such parolee, or may order any sheriff, deputy sheriff, constable, or police officer to make such arrest. A person so arrested shall be confined in the jail or detention home of the county in which he is arrested until released on parole or removed to the proper institution.

2) *A) The Hearing:  Technical Violations*

The hearing shall be conducted by the Regional Coordinator or person of supervisory rank designated by him. The supervisor shall be a person other than the supervisor controlling the case.  The hearing shall be scheduled to take place within ten working days after our official detainer is filed against the parolee.

Defendants acknowledged that they were aware of the *Morrissey* decision and of Bulletin 13 at the time in question, but asserted that they reasonably and in good faith believed that plaintiff's May 29, 1973, bond forfeiture on the intoxication charge constituted a "conviction" within the meaning of Bulletin 13 and thus obviated the requirement for a *Morrissey* on-site probable cause hearing.  Defendants first raised this defense of good faith in a motion for summary judgment filed with the district court prior to trial.  Defendant Barkeloo submitted an affidavit in support of this motion stating as follows:

Affiant assumes that the Adult Parole Authority failed to give Plaintiff an "on-site" hearing because the general practice and understanding at the Adult Parole Authority then was that a municipal court bond forfeiture, as had occurred in plaintiff's intoxication case, satisfied the "probable cause" finding requirement of *Morrissey v. Brewer,* 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972) in parole revocation cases, even if there was more than one charge against the parolee.

In a deposition prior to trial, defendant Sanborn explained the unwritten policy on bond forfeitures this way:

A.  Once probable cause has been established, by virtue of the fact that he posted bond, was found guilty by the court, by forfeiting that bond, our central office Case Review Section had thirty days within which to make a decision.

Q.  Under the policy at that time, you could take the full thirty days even though the parolee was incarcerated?

A.  That is correct.

Q.  At that time the policy was that the bond forfeiture was sufficient to comply with whatever legal requirements you had?

A.  That is correct.

Q.  Okay.  Is this still the policy?

A.  No, it is not.

Q.  Okay.  You would now, if I am correct, have an actual hearing?

A.  Right.  We do not consider bond forfeitures at this time to mean a guilty plea or a court finding them guilty in absenteeism—absentee.

Q.  Do you recall when this policy changed?

A.  I'm not certain, but I think it was November, 1973.

*       *       *       *       *       *

At trial, defendants Sanborn and Barkeloo and Harold E. Harris, Deputy Superintendent of the Ohio Adult Parole Authority at the time in question, all testified that it was accepted procedure in the Parole Authority in May of 1973 to consider a bond forfeiture as sufficient showing of probable cause to revoke parole to allow for incarceration under Bulletin 13 without an on-site hearing.  The only evidence of a contrary policy adduced by the plaintiff was the introduction of Bulletin 13 itself, which contains no reference to this unwritten bond forfeiture exception to the on-site hearing requirement.

At the close of all proof before the district court, the defendants requested the following instruction to the jury concerning their alleged good faith:

In the event the jury determines the rights of Dennis Wolfel have been violated by these defendants and the violation is the proximate cause of injury to the plaintiff, before it can return a verdict in favor of the plaintiff, the jury must consider whether or not the defendants acted in good faith.

The defendants contend they, in good faith, believed it was not necessary to hold an on-site hearing to determine if there was probable cause that Dennis

Wolfel was a parole violator. If the jury should believe from a preponderance of the evidence that the defendants reasonably believed in good faith it was proper not to have an on-site hearing, then a verdict for the defendants should be entered even though the jury may find the defendants violated the Civil Rights of Dennis Wolfel.

However, mere good intentions which do not give rise to a reasonable belief that an on-site hearing was not required cannot justify the failure to provide an on-site hearing.

The district court declined to give the proposed instruction and, after hearing defendants' objections, also declined defendants' request that an alternative charge on "how the law of good faith affects the Plaintiff's claim" be given. Instead, the court instructed the jury as follows on the issue of liability for failure to provide an on-site hearing:

The Court instructs you that a bond forfeiture does not remove the necessity of such a hearing as an essential element of due process of law.

I instruct you that as a matter of law plaintiff was denied due process of law in that he was not given a hearing to determine whether there was reasonable cause to hold him in confinement pending another hearing to determine whether he had violated the provisions of his parole. Further, I instruct you that under the nonconflicting facts of this case the hearing should have been held no later than ten days from the date of his arrest, May 30, 1973.

If you find that the acts or failure to act of either or both of the defendants was the direct or proximate cause of the failure to provide plaintiff a hearing, it is then your duty to determine an amount that will compensate plaintiff for his damage resulting from his confinement from June 8, 1973, to June 27, 1973. If you do not find, however, that the acts or

failure to act of either defendant was the direct or proximate cause of the failure to provide plaintiff a hearing, you must find for defendants.

The jury resolved the causation question in favor of the plaintiff and awarded Wolfel $1,000 in damages. The district court entered judgment for the plaintiff for this amount on January 8, 1975.

Defendants Sanborn and Barkeloo filed alternative motions in the district court for judgment n.o.v. and for a new trial. They contended in support of their motions that the evidence at trial had conclusively established a good faith defense to the claim that the decision not to conduct an on-site hearing denied Wolfel his constitutional rights. In a memorandum and order dated March 18, 1975, the district court set aside the judgment against defendants and granted the motion for a new trial, stating as follows: [2]

While the Court firmly adheres to its earlier opinion that a bond forfeiture is not a judicial determination of fact which suffices to supplant the need for a *Morrissey* on-site hearing, it would appear that if the defendants reasonably and in good faith relied upon a policy of the Ohio Adult Parole Authority in holding Mr. Wolfel without benefit of an on-site hearing, they may not be required to respond in damages under 42 U.S.C. § 1983 for such unconstitutional action. Whether such a policy existed and whether the defendants reasonably and in good faith relied upon it are questions of fact which cannot be resolved by the Court on a motion for judgment notwithstanding the verdict.

For the reasons set forth hereinabove, it is hereby ORDERED that the judgment entered herein on January 8, 1975, be and it hereby is set aside. This matter will be scheduled for trial upon a future order of the Court.

In anticipation of a new trial, defendants Sanborn and Barkeloo filed a motion for

---

2. Although the district court granted defendants a new trial on the on-site hearing issue and good faith, the court stated in the March 18 memorandum that the directed verdicts for the defendants on the arrest and search questions were not being reconsidered by the court.

summary judgment with the district court, supported by affidavits from Barkeloo and from Harold E. Harris, Acting Superintendent of Parole Supervision. The Harris affidavit indicated that the office of the Attorney General of Ohio had approved the procedure regarding bond forfeitures and elimination of the on-site hearing requirement followed by defendants:

Affiant further states that as Deputy Superintendent of Parole Supervision, he was a co-author of Parole Supervision Bulletin 13. Affiant further states that for purposes of Parole Supervision Bulletin 13 the Adult Parole Authority treated a municipal bond forfeiture as a judicial determination of a violation of parole. Furthermore affiant states that this policy was generally known within the Adult Parole Authority and it received prior approval from the Attorney General's office.

Affiant further states that in the case of Dennis Wolfel, he requested independent verification of the policy from the Attorney General's Office which was given. Further Affiant states that the procedures employed in that case were in full compliance with the policies of the Adult Parole Authority as were then in existence.

Plaintiff argued in response to defendants' motion for summary judgment that the Supreme Court's analysis in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), controlled the disposition of the case and under the reasoning in *Wood* the defendants had not acted in good faith because it was "clear and well decided" at the time in question that a municipal bond forfeiture did not constitute a conviction. Plaintiff cited *Torbett v. State,* 449 P.2d 725 (Okl.Cr.1969), and *Almond v. Countryside Casualty,* 455 F.2d 503 (8th Cir. 1972), in support of this contention, and asked the court to reconsider its grant of a new trial.

In a memorandum dated July 29, 1975, the district court denied defendants' motion for summary judgment, and then reconsidered its grant of a new trial in light of *Wood,* the cases cited by plaintiff, and this court's opinion in *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975). The court concluded that, although there was "undisputed evidence" in the record that the unwritten policy of the Parole Authority in May and June of 1973 was to consider a bond forfeiture to be a conviction for purposes of determining whether a parolee was entitled to a preliminary hearing under *Morrissey* and Bulletin No. 13, it was "unreasonable" for defendants to have relied on this policy under the circumstances presented. The court found that defendants had used the unwritten policy as a pretext for holding plaintiff in custody while they investigated the weapons charge against him and, though there was "no evidence that the defendants acted out of actual malice," their conduct exceeded the constitutional limitations on the authority they exercised. The court stated in summary:

. . . [T]he Court holds that the evidence concerning defendants' affirmative defense is as a matter of law insufficient for submission to a jury. The motion of defendants for summary judgment is denied. The order filed herein on March 18, 1975, is hereby vacated and held for naught. The judgment of $1,000 against Nick Sanborn and John D. Barkeloo is reinstated.

Defendants filed a notice of appeal to this court, and on September 2, 1975, plaintiff filed a motion with the district court seeking an allowance of attorneys fees in the amount of $3,210 on the theory that the constitutional rights vindicated by plaintiff's successful district court action "will inure to the benefit of all parolees similarly situated," and thus the defendants should bear the legal expense involved. The district court held that the plaintiff could recover $20.00 in attorneys fees from the de-

fendants pursuant to 28 U.S.C. § 1923(a),[3] but that the defendants were not liable for any fee in excess of that amount under *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Defendants appeal the verdict and judgment for $1,000 as reinstated by the district court in its memorandum and order of July 29, 1975. Plaintiff cross-appeals the directed verdicts for defendants on the arrest and search issues, and plaintiff also appeals the district court's denial of its motion for attorneys fees in excess of the statutory $20.00.

## II.

■ We conclude that defendants were entitled to have their good faith defense submitted to the jury and that the district court erred in finding that defendants' reliance on the unwritten policy of the Parole Authority was unreasonable.

■ The Supreme Court in a series of opinions including *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), has outlined the scope of the qualified immunity possessed by state officials under 42 U.S.C. § 1983. In *Wood, supra,* 420 U.S. at 321–22, 95 S.Ct. 992, in the context of determining whether and to what extent school officials are immune from damage suits under § 1983, the Court set forth a two-element standard for evaluating good faith and official immunity:

The disagreement between the Court of Appeals and the District Court over the immunity standard in this case has been put in terms of an "objective" versus a "subjective" test of good faith. As we see it, the appropriate standard necessarily contains elements of both. The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of § 1983 in a case in which his action violated a student's constitutional rights, a school board member, who has voluntarily undertaken the task of supervising the operation of the school and the activities of the students, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges. Such a standard imposes neither an unfair burden upon a person assuming a responsible public office requiring a high degree of intelligence and judgment for the proper fulfillment of its duties, nor an unwarranted burden in light of the value which civil rights have in our legal system. Any lesser standard would deny much of the promise of § 1983. Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are "charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S., at 577 [87 S.Ct. 1213]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the

---

**3.** 28 U.S.C. § 1923(a) reads in pertinent part:

**1923. Docket fees and costs of briefs—(a)** Attorney's and proctor's docket fees in courts of the United States may be taxed as costs as follows:

$20 on trial or final hearing (including a default judgment whether entered by the court or by the clerk) in civil, criminal or admiralty cases, . . . .

student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.

Although the Supreme Court in *Wood* explicitly limited its discussion of good faith immunity to the "context of school discipline," in *O'Connor, supra,* 422 U.S. at 577, 95 S.Ct. 2486, the Court indicated that the standards defined in *Wood* are appropriately consulted to determine whether the superintendent of a state mental hospital can be made to answer in damages under § 1983. This court has discussed and applied the *Wood* criteria to assess the liability of school board members in a damages action under § 1983 involving non-disciplinary official action, *Shirley v. Chagrin Falls Exempted Vil. Schs. Bd. of Ed.,* 521 F.2d 1329 (6th Cir. 1975), *cert. denied sub nom. Shirley v. Burns,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976), and also to evaluate the qualified immunity from personal liability for damages available to members of a university Board of Trustees, *Martin v. University of Louisville,* 541 F.2d 1171 (6th Cir. 1976). In *Glasson v. City of Louisville,* 518 F.2d 899, 908 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975), this court recognized that police officers have a "defense of reasonableness and good faith to actions brought for damages under section 1983" which was defined in the context of the *Glasson* case as follows:

> Although only *Pierson* specifically concerns the liability of police officers for invasion of constitutional rights, both *Scheuer v. Rhodes* and *Wood v. Strickland* are helpful in determining the conditions under which an affirmative defense of reasonableness and good faith has been established. From an examination of all three cases, we conclude that the factors to be considered in determining whether the defense has been established are whether the police officers knew or should have known that the complainant was engaged in the exercise of constitutionally protected activity, and if they knew (or should have known), whether they acted out of an honest and reasonable belief that their interference with the exercise of those rights was required to avoid imminent and serious injury to persons or property. Every asserted justification must be considered carefully on a case by case basis, and due regard must be given to the fact that the officers may be acting in the urgency of a street confrontation and not in the contemplative atmosphere of judicial chambers.

Other circuits have applied the two-element *Wood* test broadly to measure the immunity of public officers and officials from liability for damages under § 1983. The Seventh Circuit used the objective-subjective formulation articulated in *Wood* to determine that the conduct of correctional administrators was reasonable and in good faith in *Knell v. Bensinger,* 522 F.2d 720 (7th Cir. 1975). The same test was applied by the Fifth Circuit to prison officials and the Governor of Florida in *Kellerman v. Askew,* 541 F.2d 1089 (5th Cir. 1976). *See also Bryan v. Jones,* 530 F.2d 1210 (5th Cir. 1976). A number of courts have applied the two-pronged standard to evaluate the claims to immunity of law enforcement officers sued for damages under § 1983. *See, e. g., Rodriguez v. Ritchey,* 539 F.2d 394 (5th Cir. 1976); *Bursey v. Weatherford,* 528 F.2d 483 (4th Cir. 1975), *cert. granted,* 426 U.S. 946, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976). The *Wood* analysis was applied by the Eight Circuit in a § 1983 action against state bank officials in *Guzman v. Western State Bank of Devils Lake,* 540 F.2d 948 (8th Cir. 1976). At least two courts have indicated that the principles stated in *Wood* may be applied generally to gauging a good faith defense to liability for damages under § 1983 in actions against public servants. *See Foster v. Zeeko,* 540 F.2d 1310, 1313 (7th Cir. 1976); *Morris v. Travisono,* 528 F.2d 856, 858 n. 5 (1st Cir. 1976).

We hold that the two-pronged standard articulated by the Supreme Court in *Wood* and *O'Connor* applies to the challenge to the official conduct of the parole officers in the case at bar. Applying that standard to the actions of defendants in not affording plaintiff an on-site *Morrissey* hearing, we conclude that the judgment of the district court must be reversed.

The first question is whether the defendants were acting "sincerely and with a belief that [they were] doing right . . ." when they determined that plaintiff was not entitled to an on-site hearing. *Wood, supra.,* 420 U.S. at 321, 95 S.Ct. at 1000. The district court stated in its memorandum of July 29, 1975, that "There is no evidence that the defendants acted out of actual malice." The court went on to find, however, that ". . . [T]he defendants seized upon a legal pretext as a means of keeping Wolfel in custody while more evidence could be sought. He was held not for possessing a weapon, according to defendants, but for intoxication." The district court did not consider this "pretext" to be *per se* constitutionally impermissible, but the court found that reliance on such a devise by law enforcement officials was subject to "careful scrutiny" where good faith was at issue.

We agree with the district court that the evidence the defendants used the bond forfeiture as a pretext for holding plaintiff without a preliminary *Morrissey* hearing raises a question regarding their claims of subjective good faith. We believe, however, that the determination of good or bad faith in the minds of the defendants (to the extent this can be determined) was a matter for the jury to determine in the first instance. The district court refused the defendants' requested instructions on this matter and we hold that this was error.

The second consideration under *Wood,* the objective prong of the test, is whether the defendants acted "with such disregard of the [plaintiff's] clearly established constitutional rights that [their] action cannot reasonably be characterized as being in good faith." *Wood, supra.,* 420 U.S. at 322, 95 S.Ct. at 1001. The district court's conclusion that the defendants' reliance upon the unwritten policy of the Parole Authority regarding bond forfeitures was unreasonable as a matter of law is not supported by the record or the historical setting of this case.

The decision in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), was announced by the Supreme Court on June 29, 1972. As Deputy Superintendent Harris observed at trial, *Morrissey* worked substantial changes in the law regarding the constitutional rights of parolees: "The decision did, I believe, to corrections what the *Miranda* decision had done to police departments. It required revamping, restructuring of procedures and programs." The two-hearing scheme established by the *Morrissey* decision, which included the preliminary on-site hearing at issue herein, was new to the law of Ohio.

Bulletin 13 of the Ohio Department of Rehabilitation and Correction, co-authored by Deputy Superintendent Harris, appeared in mid-January of 1973. This Bulletin, according to its stated purposes (See excerpt reproduced in text, *supra.*), was intended to implement new procedures necessitated by *Morrissey.* The events here in question occurred in late May and June of 1973—approximately 4½ months after the promulgation of Bulletin 13.

It is uncontradicted on the record before us that, despite the language of Bulletin 13, it was the policy of the Adult Parole Authority in May and June of 1973 to consider a municipal bond forfeiture as obviating the need for a preliminary on-site hearing. This policy had received the approval of the Office of the Attorney General of Ohio.

Can it be said on these facts that, as a matter of law, plaintiff herein had a "clearly established constitutional right" to an on-site hearing which defendants could not reasonably deny him based on the bond forfeiture policy of the Parole Authority? We do not think so. The cases cited by plaintiff in support of the proposition that it was "basic and unquestioned" in May of 1973 that a bond forfeiture did not obviate the *Morrissey* on-site hearing requirement were not binding on the defendants in Ohio and, upon scrutiny, do not clearly support the legal proposition for which they are cited. We note that our decision in *Glasson, supra.,* 518 F.2d at 899, is distinguishable from the instant case on the issue at hand because of the determination in *Glasson* that clearly established first amendment

rights to peaceful communication were disregarded by the police officers therein.

We have no quarrel with the district court's holding that a municipal bond forfeiture does not now satisfy the *Morrissey* requirement of a preliminary determination of probable cause to revoke parole. Defendants do not challenge this determination, and the unwritten policy of the Parole Authority in this regard was changed some time after the events herein. We disagree with the district court's holding that defendants were not entitled on the facts of this case to have the jury determine whether they acted unreasonably in May and June of 1973 when they relied on the unwritten policy of the Parole Authority and thereby held plaintiff in custody for 27 days without an on-site hearing. *See O'Connor, supra.,* 422 U.S. at 577, 95 S.Ct. 2486.

### III.

■ In reviewing plaintiff's contentions that the directed verdicts on the arrest and search issues were improvidently granted by the district court, this court must apply the strict standard that a directed verdict was not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. *Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir. 1973). Where there is conflicting evidence presented sufficient to raise a material issue of fact, a directed verdict should not be granted, and credibility of evidence is not to be considered in making the determination. *O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir. 1975); *Greer v. United States,* 408 F.2d 631, 635 (6th Cir. 1969). Applying these standards to the case at hand, we hold that the district court correctly directed verdicts for the defendants on the arrest and search issues.

■ There is no dispute concerning the material facts surrounding the defendants' decision to arrest plaintiff on May 30, 1973. Plaintiff's argument that the defendants did not have "reasonable cause"[4] to make an arrest because the Columbus Police Department had investigated the complaints against plaintiff and declined to arrest him based on those complaints has no support in logic or authority. This court cannot conclude from the bare fact that police officers do not arrest a suspect or charge him with a crime that there was no probable cause to effectuate an arrest. We also note, as a factual matter, that the Columbus Police did arrest the plaintiff on May 28th based on the complaints against him by Mrs. Gladys Kuhn. Mrs. Kuhn's allegations of brandishing a gun, trespass and harassment on the 27th and 28th of May were communicated immediately to the Columbus Police and were not stale when presented to the Parole Authority on the 29th. The cases cited by plaintiff challenging the reliability of the information before the defendants do not involve victim-informants and are otherwise distinguishable from the facts herein. We agree with the district court that the only reasonable conclusion from the facts presented was that defendants could not be made to answer in damages under § 1983 for the arrest of plaintiff on May 30.

■ Similarly, we affirm the district court's determination that as a matter of law plaintiff's fourth amendment rights were not violated by the search of his room on May 31, 1973. Plaintiff contends that there was a contested material question of fact before the district court concerning consent to the search by his grandmother; however, we do not find evidence in the record to support this contention. The parole officers who conducted the search testified that they had permission from Mrs. Wolfel. When asked whether the officers had requested her permission to search, Mrs. Wolfel responded: "Why, I don't know. I reckon they did. I won't say for sure." There was no evidence indicating coercion or other impropriety on the part of the officers and we agree with the district court's conclusion that there was no dispute on the consent question to be submitted to the jury. We also concur in the district court's determination that occasional references to the room in question as "Dennis's

4. See O.R.C. § 2967.15, quoted in note 1, *supra.*

room" by Mrs. Wolfel did not, in light of all the evidence, raise a jury question concurring Mrs. Wolfel's authority to consent to a search of the room.

In light of our resolution of the issues hereinabove, we affirm the district court's holding that plaintiff may not recover attorney's fees, without reaching the merits of plaintiff's argument concerning *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Accordingly, and for the reasons indicated, we reverse the verdict and judgment of the district court awarding $1,000 in damages to plaintiff, and remanded this matter to the district court for further proceedings consistent with this opinion. We affirm the directed verdicts by the district court on the arrest and search issues, and also affirm the denial of attorneys fees to plaintiff.

No costs are taxed. The parties will bear their own costs on this appeal.