Dennis WOLFEL, Plaintiff-Appellee,

v.

Nick SANBORN, et al.,
Defendants-Appellants.

No. 80–3012.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1981.

Decided and Filed Nov. 18, 1981.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 14, 1982.

William J. Brown, Atty. Gen., Thomas V. Martin, Allen P. Adler, Asst. Attys. Gen., Columbus, Ohio, for defendants-appellants.

Michael E. Geltner, Ellen S. Shapiro, Geltner & Ritchie, Washington, D. C., for plaintiff-appellee.

Before EDWARDS, Chief Judge, WEICK, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This is an action by a parolee against two state parole officers for arresting and imprisoning him for twenty-seven days, at which time he was released, without holding a preliminary hearing to determine probable cause as required by *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972). The parolee, Dennis Wolfel, filed this action pursuant to 42 U.S.C. § 1983 against Ohio Adult Parole Authority Supervisor Nick Sanborn and Parole Officer John Barkeloo. Wolfel alleged that the two parole officers violated his *Morrissey* right to a preliminary hearing. For a recitation of the pertinent facts see the opinion of this court in the former appeal, *Wolfel v. Sanborn*, 555 F.2d 586 (6th Cir. 1977).

Following the first trial of Wolfel's claim, the jury awarded him $1,000. On appeal we reversed and remanded to the district court, holding that the two parole officers were entitled to have their defense of good faith submitted to a jury. The district judge conducted a second trial in accordance with the mandate of this court. A jury again awarded Wolfel $1,000 and the two parole officers again have appealed. We affirm.

Supervisor Sanborn and Officer Barkeloo contend: (1) The district court committed reversible error by instructing the jury that it was the parole officers' burden to prove that they acted in good faith; and (2) the district court should have granted their motion for a directed verdict on the ground that there was insufficient evidence from which the jury could find that they acted in other than subjective good faith.

In *Wood v. Strickland*, 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975), the Supreme Court wrote:

It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with a good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. *Scheuer v. Rhodes*, 416 U.S. 232, 247–48 [94 S.Ct. 1683, 1692, 40 L.Ed.2d 90] (1974).

Justice Rhenquist joined the opinion of the Court in *Gomez v. Toledo*, 446 U.S. 635, 642, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980), reading it as leaving "open the issue of the burden of persuasion, as opposed to the burden of pleading, with respect to a defense of qualified immunity." We find no decision of the Supreme Court explicitly allocating the burden of proving the qualified immunity defense.

We conclude that the district court correctly instructed the jury that it was the burden of the two parole officers to prove their defense of qualified immunity.

The nature of the qualified immunity defense supports the allocation to defendants of the burden of proving that defense. In *Gomez* the Supreme Court allocated the burden of pleading the qualified immunity defense to defendants, reasoning:

Our conclusion as to the allocation of the burden of pleading is supported by the nature of the qualified immunity defense. As our decisions make clear, whether such immunity has been established depends on facts peculiarly within the knowledge and control of the defendant.... The existence of a subjective belief will frequently turn on factors

which a plaintiff cannot reasonably be expected to know. *Id.* at 640–41, 100 S.Ct. at 1924.

This court's opinion in *Kareem Abdul Jihaad v. O'Brien*, 645 F.2d 556 (6th Cir. 1981), does not require a contrary result. In *Jihaad*, we held:

> The defendants pled official immunity as an affirmative defense. It was not contested that O'Brien was acting within the scope of his discretionary authority in conducting the hearing. This was sufficient to establish a prima facie case of entitlement. The burden of proving that O'Brien was not entitled to official immunity was then on the plaintiff. The plaintiff failed to show that the defendant was not entitled to immunity under one of the tests set forth in *Wood. See Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980). The defendant O'Brien was entitled to judgment under the doctrine of qualified official immunity. *Id.* at 564.

In *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980), the Fifth Circuit held:

> When a plaintiff seeks damages under § 1983 for a discretionary action by an official such as a prison administrator, who must exercise an exceedingly broad range of discretion in performing his official duties, the official should be entitled to qualified immunity upon a showing that he acted within the scope of his discretionary authority. The burden would then be upon the plaintiff to show either that a subjective, bad faith intent to harm him motivated the official or that the official knew or should have known that his action infringed a clearly established constitutional right of the plaintiff. An official such as a police officer, whose discretion is limited, however, must demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted.

In the present case, the two parole officers, like a policeman, exercised limited discretion. Consequently, it was their burden to prove, as the district court instructed, that they acted in good faith.

Whether this court agrees with a jury's findings of fact is not determinative of the appeal. The standard of review is whether a reasonable jury on the evidence adduced by the plaintiff and drawing all inferences in plaintiff's favor, could reasonably have found that defendants acted in other than subjective good faith. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). Our review of the record convinces us that the jury reasonably could find that Supervisor Sanborn and Officer Barkeloo acted in other than subjective good faith.

The parole officers contend that they had no authority to order the preliminary hearing required by *Morrissey*. We find nothing in the record to show that this issue was raised in the district court, and we, therefore, should not pass upon it on this appeal. *Bannert v. American Can Co.*, 525 F.2d 104, 111 (6th Cir. 1975), *cert. denied*, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

All other contentions of the parole officers have been considered and found to be without merit. The judgment of the district court is affirmed. No costs are taxed. The parties will bear their own costs in this case.

WEICK, Circuit Judge, dissenting:

I respectfully dissent. This is the second time that a jury has returned an identical $1,000 verdict against State of Ohio parole officers personally, namely, in the first trial and then again in the second trial for their alleged failure to conduct an on-site parole violation hearing which they had no authority under departmental rules of the Ohio Adult Parole Authority to conduct.

On March 5, 1973, appellee Wolfel was placed on parole. He had been serving a one to fifteen year sentence for burglary in the night season when he was paroled. Barkeloo had been assigned as his parole officer. He was also parole officer for about 60 parolees. Defendant Sanborn was Barkeloo's supervisor.

On May 27, 1973, Wolfel was arrested by Columbus, Ohio, police officers on a charge of intoxication. He was taken to the city jail where he posted bond and was released. His bond was forfeited when he failed to appear at his hearing in the Municipal Court of Franklin County, Ohio, scheduled for May 29, 1973.

During the evening of May 27, when Wolfel had been drinking at the bar in the Tip Top Club in Columbus, Ohio, he made several trips to the D & M Sub Shop, where he became involved in an argument with its owner Gladys Marie Kuhn. She called the city police and reported to them that Wolfel had threatened her with a firearm. The police arrived at the Tip Top Club and searched Wolfel and the bar but found no firearm. The police officers arrested Wolfel for intoxication.

On May 28, 1973, the Columbus police again arrested Wolfel on charges of trespassing and telephone harassment of Ms. Kuhn, who reported to the police that he threatened her life over the telephone. Wolfel told her that he was coming to get her and that her time was short. The charges were dropped some months later at the request of the city prosecutor.

On May 29, 1973, Ms. Kuhn telephoned parole officer Barkeloo and told him that Wolfel had threatened her with a firearm. He requested her to come to his office and make a statement to that effect. She came to his office that day and made a statement which was transcribed by a stenographer. She did not, however, sign the statement at that time because of the telephone threat she was afraid of what Wolfel would do to her. She did sign a complete statement at a later date on July 19, 1973.

Barkeloo discussed this matter with his supervisor Sanborn and they decided to interview Wolfel and ask him what happened. At their request, Wolfel came to their office and admitted he had been in Ms. Kuhn's shop, but denied he had a gun. Because of the seriousness of the charges, the parole officers decided to place him in custody and conduct a further investigation. Barkeloo then arrested him for parole violation on

charges of having a firearm and forfeiting bond on the intoxication charge in the Franklin County, Ohio Municipal Court.

The validity of the arrest by the parole officer Barkeloo was not in issue as it was found valid by both the District Court and this court. (555 F.2d 593).

The real question in this case is whether these two parole officers acted unreasonably and deprived Wolfel of a constitutional or statutory right to an on-site hearing which is a preliminary inquiry to determine whether there is probable cause to believe that a parole violation occurred.

No proof was offered by Wolfel, who participated in the trial in the district court as his own lawyer and cross-examined witnesses, that these two parole officers had any authority to schedule an on-site hearing. The evidence offered by the defendants was that they possessed no such authority as this could be done only by the case review section of the department under the procedure then in effect. At that time, the parole officer would submit a report to the case review section within 10 working days of the arrest. The case review section would then determine whether an on-site hearing should be held and if so determined, would assign either a regional or a unit supervisor to conduct the hearing. The hearing officer would give notice of the hearing to the parolee, explain his rights at the hearing and give him the opportunity to waive the hearing if he desired. If the hearing was not waived, it was required to be held within two weeks and following the hearing, the hearing officer had five days to file his written report.

An on-site hearing would have been held on June 27, 1973, if it had been scheduled and if the hearing officer had determined there was not probable cause to believe that the parolee had not violated his parole, he would have been released sometime after July 2, 1973.

No on-site hearing, however, was scheduled on the initial arrest in the present case. It was then the policy of the department to consider a bond forfeiture on a criminal charge as *prima facie* evidence of a parole violation which would eliminate the need

for an on-site hearing. It was regarded as a confession of guilt. In order to be certain that they were proceeding properly, the defendant parole officers requested their superiors to obtain clarification of this policy from the office of the departments' legal advisor, the Attorney General of Ohio. The superiors were advised by the office of the Attorney General of Ohio that their policy was permissible.

The fact that the parole officers were proceeding so cautiously in their handling of the case is not proof that they acted maliciously or were using this as a pretext. This case suffers from the lack of any proof of malice on the part of the two parole officer defendants in this case. At the first trial, the district court specifically found "that there was no evidence of actual malice." They were in no wise responsible for the policies of the Adult Parole Authority, but it was their duty to obey and to carry out the policies of the department. The present suit is not an action against the Authority, or the Attorney General or the State of Ohio, which is immune from liability. Hence, the case of *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972) is inapposite as the parolee has been released. *Morrissey* was a habeas corpus case in which the parolee was not released and was denied any hearing.

During the course of the investigation, Barkeloo visited Wolfel several times at the jail to ascertain whether he remembered anything which might be helpful. Wolfel told Barkeloo that if he were permitted to take a polygraph examination, he would be able to clear himself. Barkeloo then scheduled such an examination to be administered by the State of Ohio highway patrol. Wolfel, before the examination was given, changed his mind and did not desire to take it.

Barkeloo told Ms. Kuhn that he was unable to find anyone to corroborate her story and that if she did not sign her statement, it would not be sufficient to declare Wolfel in violation of his parole. She stated that she would come to his office on June 15, 1973. When she did not come to his office on June 15, 1973, Barkeloo dictated his parole violation report recommending that Wolfel be released from custody and restored to parole. This was only twelve working days after his arrest. On the following Monday, which was the thirteenth day after his arrest, Sanborn concurred in the recommendation and forwarded it on the same day to the case review section which instructed the parole officers on June 26, 1973, to release Wolfel which they did on the same day.

It is interesting that Wolfel was rearrested for additional threats with a gun made to other people on May 22 in a separate, different place. Ms. Kuhn testified at an on-site hearing that Wolfel had threatened her and one of her employees with a gun. The other witness to the separate incident also testified and a finding was made of probable cause that Wolfel had violated his parole by having a firearm and making threats. The hearing officer, however, failed to notify Wolfel as to his findings at the conclusion of the hearing and as a result of that technical error, Wolfel was released from custody.

The defendants endeavored to impeach the credibility of Wolfel by offering evidence of his convictions for rape, burglary and kidnapping which evidence they claimed was admissible under Rule 609 Fed. R.Evid. The district court declined to admit such evidence even to mitigate against his contention that he suffered trauma and emotional distress during his 27 day confinement. This ruling is not understandable in a case involving revocation of parole of a convicted felon.

The evidence that the parole officers acted upon the policy of the Adult Parole Authority was uncontroverted. They proffered an instruction to the jury which embodied the elements of a good faith defense under § 1983 which the trial court declined to give. It is submitted that the failure to give the requested instruction was prejudicial error. The district court also instructed the jury that the burden of proof was upon the defendants to show good faith.

The district court denied motions for a directed verdict. It granted a motion for judgment notwithstanding the verdict on the ground that plaintiff had not timely

filed a memorandum and then vacated the order and denied the motion for judgment n. o. v. It is argued that the district court erred in its denial of the motions for a directed verdict and for judgment n. o. v.

At the first trial although the district court found that there was no evidence of malice shown on the part of the defendant parole officers, it ruled that as a matter of law their affirmative defense was insufficient for submission to the jury. This in effect was a directed verdict in favor of the plaintiff on the defendants' good faith defense. On appeal to this court we stated:

> We conclude that defendants were entitled to have their good faith defense submitted to the jury and the district court erred in finding that the defendants reliance on the unwritten policy of the Parole Authority was unreasonable.

At the second trial, it was established beyond any doubt the policy of the Parole Authority at the time in question and it had been sanctioned by the Attorney General of Ohio so that there no longer existed any issue of fact on this issue. Since the parole officers had nothing to do with the establishment of the policy for the Authority, it was clearly their duty to obey it. The motions for directed verdict and for judgment notwithstanding the verdict raise this issue and it is our duty to determine it.

## I.

It is submitted that this case is without precedent. Parole officers employed by the Adult Parole Authority of Ohio have in this case been held personally liable in damages for obeying a policy adopted by the Authority and approved as lawful by the Attorney General of Ohio. The policy was not to hold on-site revocation of parole hearings where the parolee had jumped bail for an offense committed while on parole.

It is not understandable why the plaintiff chose to sue the parole officers individually rather than the Parole Authority if he really believed that such a policy of the Authority deprived him of his constitutional rights. It can hardly be claimed that these parole officers owed the parolee who was on parole for burglary and had also been previously convicted of rape and kidnapping, a duty to disobey the established policy of the Authority.

In recent years, parole boards have been severely condemned for releasing on parole violent felons who have committed atrocious crimes while on parole. In the present case the parolee would even deprive parole officers of a reasonable time to investigate crimes allegedly committed by him while on parole, namely, threatening the life of a woman and her employee and another person with a firearm and jumping bail after his arrest for intoxication by police officers. In all, he was released after the lapse of only 27 days. The district judge, however, allowed 10 days of this for the on-site hearing. The trouble was the parole officers had not completed their investigation in 10 days. He was rearrested on separate charges involving another person and was given an on-site hearing. At the hearing, the hearing officer found that the plaintiff had violated his parole by making threats with a firearm. Ms. Kuhn testified at that hearing as to the parolee's threats on her life with a gun. It could be argued that because of his prior conviction for rape, Wolfel did not have much respect for women and for kidnapping that he had a propensity for violent crime. At the on-site hearing, the hearing officer neglected to advise Wolfel of his findings which violated the law and Wolfel was ordered released. He was also ordered released, as previously stated, by the case review section on recommendation of the parole officers when Ms. Kuhn had not signed the statement on June 15, 1973. It also was established by uncontroverted testimony that the defendant parole officers had no authority whatsoever to conduct an on-site hearing and therefore cannot be held individually liable for the failure or refusal of the Authority to conduct one.

In my opinion, the defendant parole officers would at least be entitled to qualified immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cf. Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Butz v. Economou*, 438 U.S. 478, 95 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The overwhelming proof in this case established the good faith of the parole officers and the reasonableness of their conduct. As laymen, they could not possibly have had any reason to believe that the policy adopted by their employer Adult Parole Authority and approved by the highest legal officer of the State violated the constitutional rights of the plaintiff.

In view of this holding, it is not necessary to determine other important issues, namely, the burden of proof which the Supreme Court left undecided in *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980), and the admissability of impeaching evidence of Wolfel's convictions for burglary, rape and kidnapping. Additional grounds to support the direction of a verdict by the court may be urged in this court although not asserted in the district court.

The judgment of the district court should be reversed and the cause remanded with instructions to dismiss the complaint.