Thomas COFFY and Kenneth Bower, Plaintiffs-Appellants and Cross-Appellees,

v.

MULTI–COUNTY NARCOTICS BUREAU, Allen Laird, Kenneth Beamer, Robert J. Wilson, Phil Dennis, Ronald Collins, Barry Terjesen, Defendants-Appellees and Cross-Appellants.

Thomas COFFY and Kenneth Bower, Plaintiffs-Appellants,

v.

Judge Harlan R. SPIES, Defendant-Appellee.

Nos. 77–3603, 77–3604 and 77–3279.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 19, 1979.

Decided June 19, 1979.

---

Kenneth P. Frankel, Smith & Smith, Avon Lake, Ohio, for plaintiffs-appellants.

William A. Kyler, Smith, Renner, Hanhart, Miller & Kyler, New Philadelphia, Ohio, for Multi-County Narcotics Bureau.

Thomas A. Dugan, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for Coffy in No. 77–3603 and Multi-County, Wilson, Dennis in No. 77–3604.

Gary A. Banas, Steven E. Sigalow, Akron, Ohio, for Terjesen, Collins.

Before EDWARDS, Chief Judge, LIVELY, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This action grew out of an investigation into violations of Ohio's dangerous drug laws at Magnacca's Lounge (Magnacca's), a tavern located in the Village of Roswell, Ohio. As the result of a nine month investigation, Thomas Coffy and Kenneth Bower, proprietors of Magnacca's, were indicted, prosecuted and convicted of maintaining a common nuisance in violation of Ohio law. On appeal, their convictions were vacated and the case remanded to the state trial court. Coffy and Bower were not retried upon remand.

Coffy and Bower commenced the present action under 42 U.S.C. § 1983 against the parties who participated in the Magnacca's investigation and prosecution, alleging that they had been deprived of their civil rights in violation of the Constitution and laws of the United States.

The parties named as defendants in the action included: the Multi-County Narcotics Bureau (the Bureau), a specialized narcotics law enforcement agency; Allen Laird, Administrative Director of the Bureau; Kenneth Beamer, Deputy Director of the Bureau; Robert J. Wilson, Special Agent of the Bureau; Phil Dennis, an informant used by Wilson in his undercover investigation at Magnacca's; Ronald Collins, Prosecuting Attorney for Tuscarawas County, Ohio; Barry Terjesen, Assistant County Prosecutor and trial counsel for the state in the Coffy-Bower nuisance trial; and Harlan R. Spies, Judge of the Common Pleas Court, Tuscarawas County, Ohio, who presided over the common nuisance trial. In addition, the Tuscarawas County Sheriff's Department; Louis J. Clark, Sheriff; and William Winters, Dale Bayer and William Haney, Commissioners of Tuscarawas County, were named as defendants in the action. They subsequently were dismissed from the action by consent of the parties.

Following multiple pre-trial motions, the district court granted summary judgment in favor of Judge Spies and attorneys Collins and Terjesen. Trial of the action against the remaining defendants commenced on June 17, 1977, and concluded on June 21, 1977, resulting in jury verdicts against the Bureau, Laird and Beamer but in favor of Wilson and Dennis. Thereafter, the district court granted judgment n. o. v. in favor of the Bureau. Both sides have appealed.

We hold that the plaintiffs are not entitled to a recovery against any of the defendants. Accordingly, we affirm in part and reverse in part the judgments of the district court.

I

The Multi-County Narcotics Bureau was created in 1972 by a grant from the Law Enforcement Assistance Administration (LEAA). The Bureau operated within a six county area and received federal, county, city and village funding. Testimony at trial established that the Bureau is no longer in existence. Funding for the Bureau terminated in December 1975.

The Bureau was composed of a twelve member Board of Control. Each county within the Bureau's jurisdiction was represented by two members of the Board. Allen Laird was the Administrative Director of the Bureau. Laird's duties included reporting the activities of the Bureau to the Board of Control, as well as directing administrative activities within the Bureau. Kenneth Beamer was Deputy Director and Director of Operations for the Bureau.

Beamer had overall responsibility for initiating and directing the activities of the special agents employed within the Bureau.

The Bureau was charged with investigating possible violations of Ohio's narcotics and dangerous drug laws. Its special agents conducted undercover investigations in an effort to gather evidence and apprehend individuals involved in illicit drug transactions. As a part of the Bureau's ongoing operations, Beamer, with the knowledge of Laird, assigned Special Agent Robert Wilson to investigate possible drug trafficking at Magnacca's. This investigation commenced in October 1974 and culminated in indictments against 12 persons, including Coffy and Bower, on various drug related charges.

Phil Dennis, a suspected drug dealer who cooperated with the Bureau, was utilized as a source of contacts in the undercover investigation. The jury rendered a verdict in favor of Dennis. Coffy and Bower do not appeal this portion of the verdict. Dennis introduced Wilson to various individuals known by Dennis to have "dealt in drugs." Wilson would then attempt to ingratiate himself with "that particular peer group . . . and then after you were accepted, purchases of drugs could be made." Over the period of his investigation, Wilson made approximately 15 buys from ten different individuals in or on the premises of Magnacca's.

The entire investigation at Magnacca's was conducted as an undercover operation. Wilson did not inform Coffy or Bower of his true identity, nor did he, or anyone associated with the investigation, disclose to them the nature and purpose of the Bureau's activities at Magnacca's. At one point in the investigation Wilson approached Coffy and solicited him, asking "if there was anything for sale."

In June 1975, Deputy Director Beamer and Special Agent Wilson met with Ronald Collins, Prosecuting Attorney for Tuscarawas County, Ohio, and Assistant Prosecutor Barry Terjesen for the purpose of turning over to them the results of Wilson's investigation. Wilson explained his method of operation to the prosecutors and provided them with a written report listing a number of drug offenses. After consultation between the agents and the prosecutors, Collins determined there was sufficient evidence to bring the matter before the next session of the Tuscarawas County Grand Jury.[1]

Terjesen served as prosecuting attorney in presenting the results of the Wilson investigation before the Grand Jury. Wilson testified before the Grand Jury concerning his activities during the Magnacca's investigation. On June 13, 1975, the Grand Jury returned an indictment charging Coffy and Bower with maintaining a common nuisance in violation of former Ohio Rev. Code § 3719.46. Ten other individuals were also indicted on drug charges stemming from the Magnacca's investigation. Nine of these individuals pleaded guilty or were found guilty on the charges. One individual was at large at the time of the trial in the district court.

Prior to the Coffy-Bower nuisance trial in Common Pleas Court, Amended House Bill No. 300 (H.B. 300) was enacted by the Ohio State Legislature and signed into law. H.B. 300 made a number of changes in Ohio's dangerous drug laws. Although the Act became effective July 1, 1976, the penalty provisions of the Act were put into effect on November 21, 1975. Section 3 of H.B. 300 provided, in pertinent part:

Any person charged . . . for an offense under existing law that would not be an offense on the effective date specified in § 4 of the Act [July 1, 1976] shall have charges dismissed. . . .
Any person charged with an offense committed prior to [July 1, 1976] that shall be an offense under this Act shall be prosecuted under the law as it existed at the time the offense was committed and any person convicted . . . for an of-

---

1. Prior to their June meeting with Beamer and Wilson, neither Collins nor Terjesen had any knowledge of the Magnacca's investigation.

fense under existing law that would be an offense on [July 1, 1976] but entail a lesser penalty than the penalty provided for the offense under existing law shall be sentenced according to the penalties provided in this Act. . . .[2]

Coffy and Bower filed a pre-trial motion to dismiss the indictment on the ground that the offense charged was no longer a crime under H.B. 300. Terjesen, however, opposed dismissal and Judge Spies denied the motion and ordered the case to proceed to trial.

On December 3, 1975, Coffy and Bower filed an Affidavit of Prejudice against Judge Spies, which he forwarded to the Court of Appeals for Ohio's Fifth Appellate District. On December 9, 1975, trial on the nuisance charge commenced. Coffy and Bower were convicted by a jury of violating former Ohio Rev. Code § 3719.46 and each was sentenced to six months in jail together with a fine of $750.00, under provisions of H.B. 300, Ohio Rev. Code § 2925.13. Magnacca's was subsequently ordered closed by an order of abatement issued pursuant to Ohio Rev. Code § 3767.06.[3] Both sentences and the order of abatement were stayed pending appeal.[4]

On appeal, the Ohio Court of Appeals for the Fifth Appellate District, Tuscarawas, Ohio, vacated the convictions and remanded the action to the Common Pleas Court on the ground the trial judge improperly ruled on the Affidavit of Prejudice.[5] Following remand, the County Prosecutor elected not to retry Coffy and Bower.

II

Coffy and Bower commenced the present civil rights action on November 18, 1976. Jurisdiction was predicated upon 42 U.S.C. § 1983. In substance, Coffy and Bower complained that the defendants intentionally and maliciously had "caused" drug trafficking to occur at Magnacca's; "caused" their indictment, arrest, prosecution and conviction of a nonexistent crime; closed their place of business; injured their reputations; invaded their privacy; and caused them emotional distress and humiliation, all in violation of their federal civil rights.

Defendants responded to the complaint with a number of pretrial motions. Defendant Spies filed a motion to dismiss, or in the alternative a motion for summary judgment, or in the alternative a motion for a more definite statement, pursuant to Fed. R.Civ.P. 12(b)(6) and 56. Subsequent to the filing of a motion to dismiss, Coffy and Bower amended their complaint to particularize the allegations of the charging paragraphs. Judge Spies asserted the doctrine of judicial immunity as an absolute bar to liability under § 1983. The district court granted the motion for summary judgment.[6] Defendants Collins and Terjesen

2. See Ohio Revised Code § 5122.50 (Page Supp. 1979).

3. *The State of Ohio v. Thomas Coffy and Kenneth Bower*, No. 10850 (Common Pleas Ct., Judgment Entry on Verdict, Dec. 12, 1975, Tuscarawas Co., Ohio); *The State of Ohio v. Thomas Coffy and Kenneth Bower*, No. 10850 (Common Pleas Ct., Judgment Entry, Dec. 14, 1975, Tuscarawas Co., Ohio).

4. *The State of Ohio v. Thomas Coffy and Kenneth Bower*, No. 1195 (5th App.Dist., Dec. 17, 1975); *The State of Ohio v. Thomas Coffy and Kenneth Bower*, No. 1200 (5th App.Dist., Dec. 19, 1975).

5. *The State of Ohio v. Thomas Coffy and Kenneth Bower*, No. CA 1195 (5th App.Dist., Aug. 3, 1976) (per curiam); *The State of Ohio v. Thomas Coffy and Kenneth Bower*, No. CA 1200 (5th App.Dist., Aug. 3, 1976).

6. After the district court granted summary judgment, Coffy and Bower filed a motion for reconsideration on the ground that the amended complaint alleged facts which, if proved, would establish that Judge Spies acted in the absence of any jurisdiction. The motion for reconsideration was filed on January 18, 1977, and denied by the district court on January 25, 1977. On February 10, 1977, Coffy and Bower filed a Notice of Appeal with this court (No. 77–3195). The appeal was dismissed pursuant to Sixth Circuit Rule 8(a). Thereafter, pursuant to Fed.R.Civ.P. 54(b), Coffy and Bower petitioned the district court to enter a final judgment as to defendant Spies. On May 2, 1977, the district court entered an order granting Coffy's and Bower's motion and rendering judgment in favor of Spies. The present appeal (No. 77–3279) is from the May 2, 1977, order and judgment of the district court.

also filed a motion to dismiss under Rule 12(b)(6). The district court denied the motion on the ground that an amended complaint had been filed that cured the defects in pleading raised by the motion to dismiss. Thereafter, defendants answered the complaint, denying the material allegations and asserting a number of affirmative defenses. At the close of the pleadings and prior to trial, Collins and Terjesen filed a motion for summary judgment on the ground of prosecutorial immunity. The Bureau, Laird, Beamer, Wilson and Dennis also filed a motion for summary judgment, asserting qualified immunities as defenses to liability. Upon consideration of the motions, the district court entered summary judgment in favor of Collins and Terjesen but denied the motion as to the remaining defendants.

Trial of the action commenced on June 17, 1977. At the close of the plaintiffs' case and again at the close of the evidence, defendants moved for directed verdicts, which motions were denied by the district court. Following closing arguments, the jury was instructed and the case was submitted for deliberation. The jury returned verdicts as follows:

For Coffy and Bower and against the Bureau in the amount of $10,000 each;

For Coffy and Bower and against Laird in the amount of $2,000 each;

For Coffy and Bower and against Beamer in the amount of $3,000 each; and

For Wilson and Dennis and against Coffy and Bower.

Subsequent to trial the district court granted judgment n. o. v. in favor of the Bureau.

Coffy and Bower appeal from the decisions of the district court as to the Bureau, Collins, Terjesen and Spies, as well as the jury verdict in favor of Wilson. Beamer and Laird appeal from the jury verdict against them and in favor of Coffy and Bower.

### III

To establish a right to relief under § 1983, a plaintiff must plead and prove at least two elements: (1) that he has been deprived of a right "secured by the Constitution and laws" of the United States; and (2) that the defendant deprived him of this right while acting under color of law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). After a thorough review of the record, we conclude that Coffy and Bower have failed to make a prima facie showing that their civil rights have been violated. Accordingly, we affirm the jury verdict in favor of Wilson and conclude that the district court was correct in granting judgment n. o. v. in favor of the Bureau. We further conclude there is insufficient evidence to support the verdict against Laird and Beamer and that the district judge erred in failing to direct verdicts in their favor.[7]

Coffy and Bower predicate their § 1983 action against these defendants on the ground that Beamer initiated the investigation at Magnacca's as the result of personal animus against Coffy arising from the fact

---

**7.** We conclude this issue has been properly preserved for appeal. 5A Moore's Federal Practice ¶ 50.05[1] (2d ed. 1977); 9 Wright & Miller, Federal Practice and Procedure: Civil § 2536 (1971). The Bureau, Laird, Beamer, Wilson and Dennis filed a motion for summary judgment, arguing they were entitled to a good faith immunity on the ground the investigation at Magnacca's was initiated for good and sufficient cause. In their brief to this court, these defendants argued they were immune from liability because they did not violate the plaintiffs' rights and because they acted with a good faith purpose, and there were reasonable grounds for their actions.

Strictly speaking, the issue of qualified immunity arises only after the plaintiff has made out a prima facie violation of federally protected civil rights. Freed, *Executive Official Immunity for Constitutional Violations: An Analysis and a Critique*, 72 Nw.U.L.Rev. 526, 556 n. 149 (1977); *Developments in the Law—Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1210 (1977). Although inartfully framed, it is clear that the gravamen of defendants' argument in asserting a qualified immunity is to challenge the sufficiency of the evidence to establish a violation of Coffy's or Bower's civil rights.

that Coffy had been acquitted on illegal drug sale charges. Coffy and Bower further contend that Beamer ordered Wilson to "cause drug trafficking to occur" at Magnacca's.

To establish that Beamer was out to "get Tom Coffy," Coffy and Bower offered testimony concerning an alleged confrontation between Beamer and Coffy following the latter's acquittal on state charges of unlawful sale of cocaine. Both Coffy and his wife testified that at the conclusion of the state criminal trial, Beamer accosted them in the hallway outside the court-room and stated: "You son-of-a-bitch, you might've got off of this one, but I'm going to see that you get busted. I'm going to see your place closed." Coffy and Bower contend that subsequent to this incident Beamer ordered the investigation at Magnacca's as a vehicle through which he could put Coffy out of business.

■ Both sides agree the investigation at Magnacca's commenced in October 1974. Testimony from Barbara Coffy indicates the incident between Beamer and Coffy occurred in April 1975. Furthermore, records on file with the Clerk of the Common Pleas Court of Tuscarawas County, Ohio, establish that Coffy's drug sale trial began on April 1, 1975, and ended on April 2, 1975, with a verdict of not guilty.[8] Therefore, the investigation at Magnacca's was not the product of a confrontation between Beamer and Coffy, as Coffy and Bower contend, because that incident could not have occurred earlier than April 2, 1975, some five months after Wilson began his undercover activities. The contention that Coffy's not guilty verdict was the motivating factor behind Beamer's decision to initiate an investigation at Magnacca's is directly contradicted by the facts.[9]

■ Coffy and Bower further contend that, pursuant to Beamer's orders, Wilson "caused" or "established" drug trafficking to occur at Magnacca's. Coffy and Bower infer that prior to the investigation there was no such activity at Magnacca's. It is asserted that Wilson introduced the drug trafficking into Magnacca's for the sole purpose of implicating Coffy and Bower in criminal activity that could somehow be used to close their business. To the contrary, the evidence at trial conclusively established that Wilson did nothing more than utilize routine undercover investigation techniques to identify and document illegal drug transactions occurring at Magnacca's.

■ Coffy and Bower called Wilson as a hostile witness and questioned him repeatedly about his method of operation at Magnacca's:

Q It was your job to go into Magnacca's and to get people to sell drugs to you; isn't that correct?

A Well, it was my job to gather evidence of any illegal drug trafficking.

Q And part of that job was to get people to sell drugs to you?

A That is correct.

Q And you did that undercover, so to speak?

A Yes.

Q You didn't advise the owners of the premises that you were a narcotics agent?

A No.

Q And to your knowledge no one from the Narcotics Bureau advised Tom and Ken of your activities at Magnacca's?

A No.

\* \* \* \* \* \*

Q You were there over a nine month period and you, in effect, went into their business and set up your business in their premises; isn't that correct?

A Yes.

---

8. *See, The State of Ohio v. Thomas Coffy*, No. 10806 (Common Pleas Ct., Judgment Entry on Verdict, Vol. 135, p. 485, Apr. 4, 1975, Tuscarawas Co., Ohio).

9. James Lupi testified to the effect that sometime during the summer of 1974 Beamer approached him to see if he would help Beamer "get Tom Coffy." This testimony in no way established that Beamer initiated an investigation at Magnacca's to put Coffy and Bower out of business.

Q Isn't it correct that you made it known to people that you were there to purchase drugs; isn't that part of your operation?

A That is correct.

Q Isn't it also correct that Thomas Coffy and Kenneth Bower had absolutely no choice in the matter as to whether or not you went in there and sold drugs? They couldn't prevent that; isn't that correct?

A I had never sold drugs.

Q Strike that then. Isn't it correct that Thomas Coffey [sic] and Kenneth Bower had absolutely no control over whether or not you went into their business and purchased drugs?

A That is correct.

Q And you knew they had no control over that?

A True.

Q And your knowing that Tom and Ken had no control over whether or not you went in there and set up a drug business, you still testified that they were maintaining a common nuisance; isn't that correct?

A I didn't set up a drug business. A drug business was already there.

Q Isn't it a fact that you went to Magnacca's and purchased drugs? Isn't that a fact?

A That is true.

Q Isn't it also true that Tom Coffey [sic] and Ken Bower could not prevent you from doing so?

A From purchasing drugs?

Q Yes.

A No.

Q No they could not prevent you from doing so?

A Not that I know of.

Q And yet Tom and Ken were still indicted for maintaining a common nuisance even though they couldn't have prevented you from creating the nuisance?

A I did not create a nuisance. The nuisance was already there.

Q You purchased the drugs; did you not?

A I purchased the drugs that were being sold.

Q And it was those purchases that were used as evidence against Tom and Ken when they were convicted of maintaining a nuisance; isn't that correct?

A That is correct.

 \* \* \* \* \* \*

Q Isn't it true that Kenneth Beamer told you to go to Magnacca's and purchase drugs from people?

A Yes.

Q And you did testify, before the Grand Jury with respect to Tom Coffy and Kenneth Bower, you did testify to these drug purchases that you made?

A Yes.

Q And Tom Coffey [sic] and Kenneth Bower were indicted and subsequently convicted as a result of these purchases?

A Yes, they were.[10]

Wilson also directly contradicted the allegation that he had sold drugs during the course of his investigation:

Q Now, you indicated that these were people who sold drugs to you; is that correct?

A That is correct.

Q And in response to a question by Mr. Frankel you said that you never sold drugs. What is the reason for that?

A It's against the law.

Q When you testified before the Grand Jury, did you ever tell the Grand Jury

10. To the question of plaintiffs' counsel: "You were there over a nine month period and you, in effect, went into their business and set up your business in their premises; isn't that correct?," Wilson offered the potentially damning answer: "Yes." However, Wilson subsequently affirmatively stated: "I didn't set up a drug business. A drug business was already there."

It is important to note that it was questions from counsel, and not the testimony of any witness, which continually referred to the possibility that Wilson had "caused drug trafficking to occur" at Magnacca's.

that either Mr. Coffy or Mr. Bower had sold drugs?

A No, I did not.

\* \* \* \* \* \*

Q On any of the times that you were at the bar, did you ever sell drugs to anyone?

A No.

Over the course of the trial, the only direct testimony that Wilson had "caused drug trafficking to occur" at Magnacca's came from Thomas Coffy. On direct examination Coffy testified:

Q What was the reason why you did that?

A Because I believed these people intentionally set up their business of buying and selling drugs in my business, and in so doing ruined my business, and in the end just about put me in prison.

And I lost my business, I lost my home, I lost my car, I lost everything I ever had.

We conclude that this opinion testimony of Thomas Coffy is insufficient, as a matter of law, to establish a violation of the civil rights of Coffy and Bower.[11]

■ The standard to be applied in determining the propriety of a grant or denial of a directed verdict is whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made. *Standard Alliance Ind. v. Black Clawson Co.,* 587 F.2d 813, 823 (6th Cir. 1978); *Morelock v. NRC Corp.,* 586 F.2d 1096, 1104 (6th Cir. 1978); *Wolfel v. Sanborn,* 555 F.2d 583, 593 (6th Cir. 1977). In considering a motion for directed verdict the district court and this court must view the evidence in a light most favorable to

the party against whom it is made. *Morelock,* 586 F.2d at 1104; 9 Wright & Miller, Federal Practice and Procedure: Civil § 2524. Only when it is clear that reasonable men could come to but one conclusion from the evidence should a court grant a motion for directed verdict. *Wolfel,* 555 F.2d at 593; 5A Moore's Federal Practice ¶ 50.05[1]; 9 Wright & Miller at § 2524.

■ Upon review of the evidence adduced by Coffy and Bower, and in viewing that evidence in a light most favorable to their case, we conclude that the evidence is insufficient to establish that the Bureau or its agents and employees violated Coffy's or Bower's rights secured by the Constitution or laws of the United States. Moreover, we conclude that the use of undercover investigative techniques and procedures to collect evidence and apprehend persons involved in illegal drug transactions are all proper police activities that, standing alone, violate no federally protected rights of the suspects involved. *Cf. Katz v. United States,* 389 U.S. 347, 350 n. 5, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). ("Virtually every governmental action interferes with personal privacy to some degree. The question in each case is whether that interference violates a command of the United States Constitution.")

■ Alternatively, Coffy and Bower seem to suggest that the failure of the Bureau or its agents to inform them of the Magnacca's investigation, together with their inability to have prevented or controlled Wilson's activities, also amounts to a violation of their civil rights. Coffy and Bower have cited us to no case holding in favor of such a proposition, nor have we found any. We note that the evidence at trial established that Wilson's undercover activities necessarily required complete se-

---

11. Scott Engstrom, a frequent patron of Magnacca's, also testified that in December 1975, two months after Wilson's investigation had concluded, Wilson contacted him in prison and asked him to testify at the Coffy-Bower nuisance trial:

Q Did he state what he wanted you to testify to?

A Well, at first he said he would make it easier for me to get out on shock probation if

I testified and he said if I didn't, it would be a hard time getting out. I told him there was nothing I could testify against—against Tom about and he said, "Just make something up." He said, "Say anything."

We have considered this testimony and find it inconclusive and of no probative value on the issue of whether Wilson "caused drug trafficking to occur" at Magnacca's.

crecy in order to assure his safety as well as to make possible the necessary "buys" to establish evidence of criminal activity. We conclude that under this alternative theory of recovery, Coffy and Bower have failed to establish a right to relief under § 1983.

## IV

There are additional reasons why these defendants are entitled to directed verdicts.

 As to the liability of Director Laird, Coffy and Bower have shown nothing more than the fact that Laird had a general knowledge of the Magnacca's investigation. Coffy and Bower offered no testimony that Laird knew of an alleged plot to "get Coffy" or to "cause drug trafficking" at Magnacca's. It is clear that absent a showing that Laird is somehow personally at fault by actively participating in, encouraging or directing the commission of illegal acts by his subordinates, there can be no recovery against him. *See, e. g., Lessman v. McCormick,* 591 F.2d 605, 612 (10th Cir. 1979); *Duchesne v. Sugarman,* 566 F.2d 817, 830–31 (2d Cir. 1977); *McDonald v. State of Illinois,* 557 F.2d 596, 602 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); *Ford v. Byrd,* 544 F.2d 194 (5th Cir. 1976); *Hanna v. Drobnick,* 514 F.2d 393, 398 (6th Cir. 1975); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *Cf. Rizzo v. Goode,* 423 U.S. 362, 373–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (no liability absent a showing that supervisory officials had affirmatively implemented an unconstitutional policy or ordered subordinates' unconstitutional acts). Liability under § 1983 may not be imposed upon an official simply on the basis of *respondeat superior. See generally,* Recent Developments, 90 Harv.L.Rev. at 1204–17. Neither have Coffy and Bower made out a case for nonfeasance on the part of Laird. While Laird was the Director of the Bureau, nothing in this record indicated that Laird was put on notice of an alleged scheme to put Coffy and Bower out of business that he should have prevented. *McCollan v. Tate,* 575 F.2d 509, 512 (5th Cir.

1978), *cert. granted,* 439 U.S. 1114, 99 S.Ct. 1015, 59 L.Ed.2d 71 (1979); *Dimarzo v. Cahill,* 575 F.2d 15, 18 (1st Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978). The district court erred in denying the motion for directed verdict as to Laird.

## V

Deputy Director Beamer is also entitled to a directed verdict. Coffy and Bower simply failed to establish that Beamer acted out of personal animus against Coffy or that the investigation he ordered violated their civil rights. *See generally,* Freed, Executive Official Immunity for Constitutional Violations: An Analysis and a Critique, 72 Nw.U.L.Rev. 526, 562–64 (1977). We recognize that in *Lessman v. McCormick,* 591 F.2d 605 (10th Cir. 1979), the court held that appellant Lessman had stated a cause of action under § 1983 for false arrest and false imprisonment even though Lessman conceded that she had been arrested on a valid warrant for an overtime parking violation that had not been paid. The court in *Lessman* held that an arrest that is otherwise lawful may be actionable under § 1983 if undertaken for an improper purpose. *Id.* at 611. The improper purpose alleged in *Lessman* was that the police had arrested Lessman in order to intimidate her into paying a bank debt that Lessman owed the Topeka Bank & Trust, and not for any law enforcement purpose. *Id.* at 610–11.

 The present case is distinguishable from *Lessman.* Even assuming Beamer's interest in the activities at Magnacca's was the result of his personal feelings toward Coffy, there is nothing in this record that would lead reasonable persons to conclude that the undercover operation was initiated for any purpose other than to investigate possible violations of Ohio's narcotics and dangerous drug statutes occurring at Magnacca's. Vague references to threats and offers to bribe by interested witnesses that conflict with the facts are insufficient to make out a claim under § 1983. *See also* 9 Wright & Miller at § 2527.

581

## VI

■ The jury verdict in favor of Wilson is supported by substantial evidence. Coffy and Bower have established nothing more than Wilson's use of routine investigative techniques in performing his assigned duties. Where an officer lawfully performs duties imposed by law or follows the directions of a supervisor that are fair and reasonable on their face, the officer should be deemed to have acted reasonably as a matter of law. *Mundy v. State of Georgia,* 586 F.2d 507, 508 (5th Cir. 1978); *Wolfel v. Sanborn,* 555 F.2d 583, 590–94 (6th Cir. 1977); *Rodriguez v. Ritchey,* 539 F.2d 394, 401–02 (5th Cir. 1976), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1977); *Glasson v. City of Louisville,* 518 F.2d 899, 907–11 (6th Cir. 1975); *Perry v. Jones,* 506 F.2d 778, 780 (5th Cir. 1975).[12]

## VII

■ The district court was clearly correct in directing a verdict in favor of Judge Spies, *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 20 L.Ed. 646 (1872); and in favor of the prosecutors, Collins and Terjesen, *Imbler v. Pachtman,* 424 U.S. 409, 424–29, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Hilliard v. Williams,* 540 F.2d 220 (6th Cir. 1978).

We conclude that the district court also was correct in granting a judgment n. o. v. in favor of the Bureau. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691–93, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## VIII

The jury verdict in favor of Wilson is affirmed. The summary judgments in favor of Judge Spies, Collins and Terjesen are affirmed. The judgment n. o. v. in favor of the Bureau is affirmed. The judgments against Laird and Beamer are reversed.

12. We reject the argument made by the Bureau, Laird, Beamer and Wilson that this action is barred by the Ohio Statute of Limitations. *Crawford v. Zeitler,* 326 F.2d 119, 121 (6th Cir. 1964). Even if this case was simply one for malicious prosecution, the action would still be

No costs are taxed. Each party will pay his own costs on this appeal.

timely filed. The action was commenced within one year following journalization of the judgment in favor of the party bringing action. *Levering v. National Bank of Morrow County,* 87 Ohio St. 117, 100 N.E. 322 (1916).