**Dennis WOLFEL, Plaintiff,**

v.

**Imogene FERGUSON, et al., Defendants.**

**No. C–1–82–175.**

United States District Court, S.D. Ohio, W.D.

Dec. 11, 1987.

Dennis Wolfel, pro se.

Steven P. Fixler, Asst. Atty. Gen., Cincinnati, Ohio, for defendants.

ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court after a trial to the bench held on May 11, 12, and 14, 1987. This Court does hereby submit Findings of Fact and Conclusions of law pursuant to Fed.R.Civ.P. 52.

This action was brought pursuant to 42 U.S.C. Section 1983. Plaintiff seeks damages, declaratory judgment and injunctive relief based on the medical treatment he has received while an inmate.

During the trial, plaintiff was granted a default judgment and damages against defendant Ferguson who had been served but did not respond to any pleadings nor appear at the trial. The Court then heard evidence going to the declaratory judgment and injunctive relief plaintiff sought against defendant Horn.

Plaintiff asks this Court to find from the evidence presented that the overall medical care delivery system at SOCF is deliberate-

ly indifferent to his serious medical needs, specifically, that defendants have no treatment plan or program to treat plaintiff's chronic spinal problem, requiring him to repeatedly request treatment even though defendant Horn has both actual and constructive knowledge of his continuing medical problem.

Plaintiff further submits that the prison Medical Director's general 'standing orders' require or at least permit Registered Nurses to diagnose, treat, or refuse to treat a long list of medical problems in violation of Sections 4723.06 and 4723.33 of the Ohio Revised Code. He alleges that there is an inadequate number of doctors employed at the Southern Ohio Correctional Facility to attend to the plaintiff and the other inmates' serious medical needs, and that this inadequacy is further aggravated by the 7 day stop order policy which requires the few over burdened physicians at the prison to examine an additional 200 inmates per week.

All acts, policies and procedures taken together and considered in their totality, plaintiff contends, evidence defendants' acts, policies and procedures to be deliberately indifferent to his serious medical needs in violation of the prohibition against cruel and unusual punishment.

Defendants argue that the evidence shows that plaintiffs' medical needs are not serious, defendant Horn has not intentionally denied or delayed plaintiff's access to medical care, and has not been deliberately indifferent to plaintiff's medical needs.

## FINDINGS OF FACT

1) The Court has jurisdiction of this action under 28 U.S.C. § 1343(a)(3) and (4), relating to the cause of action arising under the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. § 2201, relating to declaratory judgments.

2) Plaintiff, Dennis M. Wolfel, is a state prisoner serving a sentence of 12 to 50 years, in the care, custody, and control of the Ohio Department of Rehabilitation and Correction and has been continuously incarcerated at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio from August 26, 1976 to present.

3) SOCF is an adult maximum security penitentiary. It houses approximately 2,500 prisoners.

4) Defendant, John Horn, is the Health Care Administrator at SOCF. He is a licensed Registered Nurse, prohibited by law from prescribing medication, diagnosing illness, or choosing a course of treatment.

5) Defendant's immediate superior is L.R. Chaboudy, M.D., who is the Medical Director at SOCF and responsible for all medical care for the inmates.

6) The medical staff at SOCF consists of the following individuals:

Four (4) physicians

Six (6) Registered Nurses

Nine (9) Licensed Practical Nurses

Two (2) Emergency Medical Technicians

7) Medical procedures at SOCF pertinent to this case are:

*Sick Call:* Prisoners place themselves on sick call which is conducted every morning by a Registered Nurse. (Defendant Horn, however, does not conduct Sick Call). The R.N. examines each inmate and determines what symptoms are present. The R.N. then dispenses medication or refers the inmate to a physician pursuant to guidelines set up in the "Standing Orders."

*Standing Orders:* These are guidelines prepared, revised, and monitored by the Medical Director and followed by the Nursing Staff to determine whether an inmate is to be referred to a physician, exhibits symptoms for which a certain medication is to be dispensed, or referral is necessary. The R.N. refers the patient to a physician in the following manner:

Emergency—immediately

Stat—as soon as possible

Routine—name goes on a waiting list

Non referral—the patient is ordered to follow the standing orders and get back on sick call if further problems exist.

*Seven Day Stop Order Policy:* Certain enumerated drugs can only be prescribed

for seven days, at the end of which time, the inmate must be seen by a physician to have the drug prescription renewed. The Medical Committee implemented this policy pursuant to the recommendation of the prison pharmacist who felt that the physicians there were prescribing too many controlled substances to the inmates. The aim of this policy is to prevent addiction, abuse, and barter of strong drugs.

A physician is on call at all times. The prison physicians can refer an inmate to a specialist, who can make recommendations and prescribe a course of treatment subject to the Medical Director's acceptance or rejection.

If an inmate is not satisfied with the results obtained during sick call, he can address a "Kite"—an intraprison communication—to the Medical Director explaining his condition and questioning the nurse's determination.

8) Sometime in July of 1976, plaintiff injured his back while playing volleyball. He was admitted to James Hospital in Columbus, Ohio, for this back injury. An electromylograph examination was ordered by a Dr. Pabst, an orthopedic specialist, at this time which revealed nerve root encroachment and mild irritability without denervation at the C–6 and C–7 area of plaintiff's spine. This condition is very painful. Ten pound traction, heat packs, pain medication, and bed rest were ordered by a doctor to treat the condition. On August 10, 1976, plaintiff was discharged from James Hospital. Plaintiff was again admitted several months later, however, to James Hospital in Columbus, Ohio, for the back injury. Dr. L. Pabst ordered bed rest, pain medication, a cervical collar and physical therapy twice a day.

9) As a result of this injury and other conditions, plaintiff has been diagnosed as having the following:

Mild dextroscoliosis

Osteoarthritis

Possible nerve root irritation between the C6 and C7 vertabrae

Chronic pain syndrome

10) Because of his complaints of pain, muscle spasms, and headaches caused by his back problems, plaintiff was routinely transported by the medical staff at SOCF to Columbus for examination and treatment by an orthopedic specialist.

11) Every six months, from December 14, 1979 through November 12, 1982, plaintiff was transported from the Lucasville prison to Columbus, Ohio for examination and treatment of his chronic, degenerative spine disease by Dr. Ronald Kendricks, M.D., who specializes in orthopedic medicine. Dr. Kendricks successfully treated plaintiff's pain and muscle spasms with the drugs Talwin and Valium, which were prescribed for six months at a time.

12) From 1982 through November, 1984, Dr. Geza Locsey, a doctor at SOCF at that time, continued to treat plaintiff's pain and muscle spasms with the drugs Talwin and Valium as had the orthopedic specialist, and recommended such treatment continue.

13) Dr. Chaboudy made a medical decision that after November, 1984, plaintiff was not to be treated with Talwin and Valium. The decision was based on the recommendation of the Medical Committee after a review of plaintiff's medical records.

Since November, 1984, plaintiff has been treated with numerous types of medication and physical therapy. Physical examinations, CAT Scans, and X-rays have been used for diagnosis.

From November, 1984 to the present, plaintiff has consulted with a physician 31 times. This includes examinations by specialists in neurology and orthopedics.

From November, 1984 to the present, plaintiff has been seen by the nursing staff approximately 100 times.

14) Plaintiff has refused to undergo some diagnostic tests and take some prescribed medication.

15) In November, 1981, when plaintiff's Talwin and Valium prescriptions were about to expire, he put his name on the "Sick Call" list.

When plaintiff had not seen a doctor by December 23, 1981, he addressed a "Kite" to defendant Ferguson, the Director of

Nursing at the prison at that time, explaining that his pain and muscle relaxant medications (Talwin and Valium) were about to expire, noting that he had been on the waiting list to see a doctor since November, 1981, and requesting to see a doctor before his medication ran out.

Ms. Ferguson did not respond to plaintiff's request to see a doctor. On January 31, 1982, plaintiff again addressed a similar "Kite" to defendant Ferguson and asked her to put the plaintiff's medical file in front of a doctor and have his medication renewed until he could see a doctor. Defendant Ferguson did not respond to this Kite nor did she have plaintiff's medication renewed by a doctor. After being on the waiting list to see a doctor for approximately three months without seeing a doctor, plaintiff's pain and muscle relaxant medications expired leaving plaintiff in severe pain and discomfort.

16) At the present time, it takes an average of 10 days for an inmate to see a doctor once a nurse refers him and he is put on the waiting list. It can take up to three months.

## CONCLUSIONS OF LAW

1) To establish a right to relief under 42 U.S.C. § 1983, a plaintiff must plead and prove at least two elements; 1) that he has been deprived of a right secured by the Constitution and laws of the United States, and 2) that the defendant deprived him of this right while acting under color of law. *Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570, 576 (6th Cir.1979).

2) The eighth amendment proscribes cruel and unusual punishment. The amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ... against which we must evaluate penal measures." *Estelle v. Gamble,* 429 U.S. 97 at 102, 97 S.Ct. 285 at 290, 50 L.Ed.2d 251 (1976). The *Estelle* Court reasoned:

> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that '[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'

*Id.* at 103–104, 97 S.Ct. at 290–91. That Court concluded that deliberate indifference to serious medical needs of prisoners is proscribed by the eighth amendment. This amendment must be interpreted in a "flexible and dynamic manner" as the amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

3) Based on such instructions, this Court concludes that defendant Ferguson had manipulated and abused her position in the prison system and the procedures in place at the time, to wantonly inflict unnecessary pain on the plaintiff by not allowing him to see a physician, the only person in the SOCF system qualified or even permitted to renew plaintiff's prescription. For this violation of the plaintiff's Constitutional rights, he was awarded damages in the amount of $11,000.00 (doc. no. 94).

4) Defendant Ferguson resigned her position at SOCF and has been replaced by defendant Horn.

5) The plaintiff presented evidence of the specific injury and suffering he endured at the hands of defendant Ferguson when she refused him access to a physician. It was that refusal that formed the basis for this Court's finding of wanton, intentional denial of medical care and consequent award of damages.

6) Plaintiff presented no such specific evidence concerning defendant Horn. The practice and procedure followed by Horn in the case of plaintiff has not resulted in the

denial of access to effective medical attention which is proscribed by the eighth amendment as articulated in *Estelle*.

7) The medical staff at SOCF has an obligation to provide effective medical assistance under the conditions. In this case, if the medical staff follows the procedures in place diligently, the plaintiff would not be denied access to effective medical care.

8) Injunctive relief shall be granted only in those cases where equity requires extraordinary relief.

Interference by Federal District Courts with prison administration is to occur only when federal rights are being violated and there is no penological justification evident.

The medical staff has examined, tested, and determined that plaintiff should be treated medically with medicine other than Valium and Talwin. This refusal is based on a belief that these drugs can cause addiction and abuse, and their very presence can encourage the barter system prisons are attempting to eradicate.

This reasoning behind the policy refusing Valium and Talwin, therefore, justifies its imposition and is not unconstitutional.

As the decisions of the medical staff affecting the dispensing of Valium and Talwin were supported by adequate penological justification, and adequate medical treatment is presently being afforded plaintiff. The Court will not interfere with the day-to-day administration of SOCF in this case. The request for injunction is DENIED.

IT IS SO ORDERED.